585

(No. 75-CC-1332—

HARRY DEATHERAGE and MABEL DEATHERAGE, Claimants, *v.* STATE OF ILLINOIS, Respondent.

*Opinion filed July 25, 1978.*

DAILY & WALKER, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

POLOS, C.J.

Claimants, Mabel and Harry Deatherage have brought this action to recover for damages to their property allegedly caused by the re-grading of adjoining lands by the State of Illinois. Claimants contend that the State violated Ill.Rev.Stat. Ch. 42, §12-4, which provides, in pertinent part,

"Whenever a natural ditch or drain constructed in the course of natural drainage crosses a public highway...the highway authority shall construct and thereafter keep in repair and maintain a bridge or culvert of sufficient length, depth, height above the bed of the drain or ditch, and capacity to serve the needs of the public with respect to the drainage of the lands within the natural watershed of such drain, not only as such needs exist at the time of construction, but for all future time."

In 1973, the Department of Transportation began construction of a highway known as Route 203 in Madison County, Illinois. The project included relocating and regrading a rail crossing approach on Maryville Road, at its intersection with Route 203. During the course of construction, the State interfered with drainage on three separate parcels of real estate.

The first parcel of real estate was referred to as the "home place", and was located on Maryville Road immediately north of its intersection with Route 203. Prior to the start of construction, there was a culvert

under Maryville Road at a low point in Claimant's field, which drained into a storm sewer on the west side of Maryville Road. During the course of construction, the culvert was blocked by the new fill which was brought in by the State.

Mr. Deatherage testified that he advised the State's project engineer that the land would flood if the fill was placed in the culvert, but the State persisted in it's plans. The fill was put in place and later cut to form a new culvert. However, during the time the culvert was filled there was no drainage, and Claimants' land flooded. The new culvert was placed about 150 to 200 feet north of the low point in the field, and Claimants' field has flooded each year since then.

Claimant testified that as a result of the flooding on the "home place" he lost his planting of Indian corn, and a portion of his planting of soy beans in 1973. He said that his damages totalled $1,690.00.

The second parcel of real estate was a seven acre tract referred to as the "Borland property" which also fronts on Maryville Road. This property is across Highway 203 from the "home place." Claimant had leased that property and farmed it for about 15 years prior to 1973. Due to the flooding in the field in 1973, he could not plant his soy bean crop as he had done previously, and Claimant said he was damaged in the amount of $703.00.

The third parcel of real estate with which we are concerned consists of two acres, and was referred to as "Knight's Home Sites." Claimant had farmed the land previously, and in 1973 had planted pumpkins in the field. Again because dirt brought in for elevating the highway, the water was directed to a new low area across the field of pumpkins, thus destroying the entire

field of pumpkins and some blue grass sod. Claimant alleges that his damages in 1973 as a result of this flooding totalled $3,126.00.

The State's engineer admitted that the drainage problems on these fields had been pointed out to him, that the areas in question did flood, and that he had jurisdiction over the entire job.

Claimant continued to experience flooding problems in both 1974 and 1975, and the final grading of the ditch leading to the new culvert was not completed until late July, 1975. Claimant testified that he suffered additional losses in 1974 in the amount of $1,404.00 and additional losses in 1975 in the amount of $2,315.00.

It appears that drainage problems on the property are continuing.

It is long been held that one who negligently alters the natural flow of water on the property of an adjacent landowner, and thereby causes damage, is liable to that landowner. *Emerson v. State, 30 Ill.Ct. Cl. 420; Eimes v. Cleveland, Cincinnati, Chicago and St. Louis Railroad, 158 Ill. App. 557.*

Here the testimony in uncontradicted that in performing construction on Highway 203, at its intersection with Maryville Road, the State interferred with the natural flow of water drainage from Claimants' properties, causing damage to Claimants.

Respondent contends that Claimants' computation of damages is imprecise, and insufficient on which to base an award. However, the Court finds Claimants' testimony as to the estimates of damages was sufficient, and the Court further notes that Respondent has failed to present any evidence contradicting that testimony.

588

Claimants are therefore awarded the sum of $9,238.00.